[Cite as *Schaffer v. Ohio State Univ.*, 2025-Ohio-4962.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Alex Schaffer, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 25AP-376 |
| v. | : | (Ct. of Cl. No. 2024-00876PQ) |
| The Ohio State University, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on October 30, 2025

**On brief:** *Alex Schaffer*, pro se.  **Argued:** *Alex Schaffer*.

**On brief:** *Dave Yost*, Attorney General, *Regina Mendicino Dwyer*, and *Scott Welch*, for appellee. **Argued:** *Regina Mendicino Dwyer*.

APPEAL from the Court of Claims of Ohio

BOGGS, J.

{¶ 1} Plaintiff-appellant, Alex Schaffer, appeals the judgment of the Court of Claims of Ohio, which overruled Schaffer's objections to a special master's report and recommendation ("report"), adopted the report, and entered judgment for defendant-appellee, The Ohio State University ("Ohio State"), on Schaffer's complaint alleging a denial of access to public records in violation of R.C. 149.43.  Schaffer has also filed a motion to strike portions of Ohio State's appellate brief.  For the following reasons, we deny Schaffer's motion to strike and affirm the Court of Claims' judgment in favor of Ohio State.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 2} Pursuant to R.C. 2743.75, Schaffer filed a complaint in the Court of Claims on December 12, 2024, alleging a violation of R.C. 149.43(B) and seeking an order compelling Ohio State's compliance with public-records requests he submitted on November 24 and 25, 2024.  In his public records requests, Schaffer sought lists of the names and email

addresses of all persons who receive newsletters about Ohio State's athletic activities. Ohio State denied Schaffer's requests based on its policy limiting commercial records requests.

{¶ 3} The Court of Claims appointed a special master, who reviewed the evidence and memoranda submitted by the parties and issued a report recommending that the Court of Claims enter judgment in favor of Ohio State. The special master determined that Ohio State properly denied Schaffer's requests through application of its policy on commercial records requests, but the special master also addressed Ohio State's alternative argument that the requested lists are not "records" within the meaning of R.C. 149.011(G) or "public records" within the meaning of R.C. 149.43. The special master rejected Schaffer's argument that *Hicks v. Union Twp., Clermont Cty. Bd. of Trustees*, 2024-Ohio-5449, compels the conclusion that the lists are "records" under R.C. 149.011(G). Rather, the special master stated that the lists are "very similar" to the lists at issue in *Doe v. The Ohio State University*, 2024-Ohio-5891 (10th Dist.), in which this court distinguished *Hicks* and held that the requested materials were not "records" under R.C. 149.011(G). (Feb. 13, 2025 Report & Recommendation at 5.) The special master reasoned that, like the lists in *Doe*, "the lists at issue here do not document anything about [Ohio State's] activities except who it communicates with and how it does so." *Id*. at 6.

{¶ 4} Schaffer filed objections to the special master's report, and Ohio State responded. Schaffer argued, in part, that the special master erred by relying on *Doe* because this court did not decide *Doe* until after Schaffer filed his complaint and because *Hicks* is controlling, binding precedent. Schaffer also argued that the special master erred by determining that the requested lists do not document Ohio State's organization, functions, policies, decisions, procedures, operations, or other activities of Ohio State. Further, Schaffer argued that the special master erred by determining that Ohio State properly applied its policy on commercial requests to deny Schaffer's requests.

{¶ 5} The Court of Claims overruled Schaffer's objections, adopted the special master's report, and entered judgment in favor of Ohio State. The Court of Claims agreed with the special master that Ohio State properly applied its policy limiting the number of records that will be provided for commercial purposes, noting Schaffer's work in the ticket-reselling business, the obvious utility to that business of the requested lists, and Schaffer's use of an email address with a commercial domain. The Court of Claims also agreed with

the special master's application of *Doe*, which it recognized as binding precedent: "It is not for this Court to decide whether in *Doe* the Tenth District Court of Appeals misinterpreted or misapplied *Hicks*." *Schaffer v. The Ohio State Univ.*, 2025-Ohio-1649, ¶ 20 (Ct. of Cl.).

{¶ 6}    Schaffer has appealed the Court of Claims' judgment to this court and presents two assignments of error:

> [1.] The Court of Claims erred in overruling Appellant's objections and adopting the Special Master's Report and Recommendation, which overruled the Ohio Supreme Court and Rule of Law in *Hicks* . . ., which held Email and Mail Distribution Lists of Newsletter Programs of public offices are "records" under the Ohio Public Records Act and thus violated the Doctrine of Stare Decisis.
>
> [2.] The Court of Claims erred in overruling Appellant's objections and adopting the Special Master's Report and Recommendation, which failed to reconcile how the Email Newsletter Distribution Lists do not fit the definition of "records" in R.C. 149.011(G) despite acknowledging the decision is "hard to square" with the syllabus of the Ohio Supreme Court in *Hicks* which held Email and Mail Distribution Lists of public offices for Newsletter Programs are "records" per the definition in R.C. 149.011(G).

(Appellant's Brief at vi.)

## II. ANALYSIS

### A. Schaffer's motion to strike is not well-taken

{¶ 7}    Before turning to Schaffer's assignments of error, we first address and deny Schaffer's motion to strike portions of Ohio State's appellate brief.  Schaffer argues that, in its appellate brief, Ohio State misstates that this case involves requests for the same information that was requested in *Doe*, mispresents the contents of Schaffer's public-records request, and raises new arguments that it did not raise in the Court of Claims.

{¶ 8}    Schaffer's motion to strike is not well-taken.  First, to the extent Ohio State may conflate the requests in *Doe* and the requests in this case, this court is aware of the differences between the information requested in the two cases.  Further, reading Ohio State's brief as a whole, we can only conclude that any such conflation was unintentional.  Moreover, Ohio State clearly and correctly addresses elsewhere the specific, different requests at issue in *Doe* and here.  We further disagree with Schaffer's suggestions that Ohio

State has misrepresented the relief Schaffer seeks in this case and that Ohio State raises new arguments it did not raise in the Court of Claims. As in the Court of Claims, Ohio State's overarching argument here concerns application of the relevant case law—particularly, *Hicks* and *Doe*—which the parties and the Court of Claims fully addressed below. Finding no basis to strike any of Ohio State's brief, we deny Schaffer's motion to strike and turn to Schaffer's assignments of error.

{¶ 9} As both of Schaffer's assignments of error challenge the Court of Claims' judgment overruling Schaffer's objections and adopting the report, we address the assignments of error together.

### B. The Public Records Act and standard of review

{¶ 10} Ohio's Public Records Act requires a public office to promptly make copies of public records available to any person upon request. R.C. 149.43(B)(1). A "public record" is a record kept by any public office, except as otherwise provided in R.C. 149.43(A)(1). For purposes of the Public Records Act, the term "records" includes:

> any document, device, or item, regardless of physical form or characteristic, including an electronic record . . ., created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

R.C. 149.011(G). Courts construe the Public Records Act liberally in favor of broad access to public records and resolve doubts in favor of disclosure. *State ex rel. Cable News Network, Inc. v. Bellbrook-Sugarcreek Local Schools*, 2020-Ohio-5149, ¶ 8.

{¶ 11} A person aggrieved by a denial of access to public records in violation of R.C. 149.43(B) may file either a mandamus action, pursuant to R.C. 149.436(C)(1), or a public-records-access complaint in the Court of Claims, pursuant to R.C. 2743.75. "[T]he General Assembly enacted R.C. 2743.75(A) 'to provide for an expeditious and economical procedure that attempts to resolve disputes alleging a denial of access to public records' in violation of R.C. 149.43(B)." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 12, quoting R.C. 2743.75(A). In an R.C. 2743.75 action, the requester must plead and prove facts showing that it "sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Id.* at ¶ 33. In *Welsh-Huggins*, the Supreme Court of Ohio assumed without

deciding that a requester must demonstrate entitlement to relief under R.C. 2743.75 for the denial of access to public records in violation of R.C. 149.43(B) by clear and convincing evidence. *Id*. at ¶ 34.

{¶ 12} Whether material qualifies as a record under R.C. 149.011(G) presents a mixed question of law and fact. *Doe*, 2024-Ohio-5891, at ¶ 19. When presented with such an issue, an appellate court " 'will independently review the legal question de novo but will defer to the trial court's underlying factual findings, reviewing them only for clear error.' " *Id*., quoting *Welsh-Huggins* at ¶ 37. To prove that requested materials are "records" for the purposes of R.C. 149.011(G) and 149.43, the requester must establish that they are "(1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the state agencies, (3) which serve to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." *State ex rel. Dispatch Printing Co. v. Johnson*, 2005-Ohio-4384, ¶ 19.

{¶ 13} Schaffer maintains that, in determining whether the requested distribution lists qualify as records under R.C. 149.011(G), the Court of Claims erroneously applied this court's *Doe* decision rather than the Supreme Court of Ohio's earlier decision in *Hicks*. Indeed, in his first assignment of error, he goes so far as to state that the report, adopted by the Court of Claims, erroneously "overruled" *Hicks*. (Appellant's Brief at vi.) We will address *Hicks* and *Doe* in turn.

## C. *Hicks*

{¶ 14} We first turn to the Supreme Court of Ohio's opinion in *Hicks*. Hicks submitted a public-records request to the Union Township, Clermont County Board of Trustees ("the township"), requesting email and mail distribution lists for the township newsletter. After the township denied the request, Hicks filed a complaint in the Court of Claims pursuant to R.C. 2743.75(D).

{¶ 15} Affidavits established that the township published a quarterly newsletter to provide the community with pertinent information from its governing body. The township used a third-party, direct-mail vendor to send the newsletter to all mailing addresses in the township. The mailing list was maintained in conjunction with the local post office and was based on local zip codes. A township employee maintained an email distribution list for those who elected to receive the newsletter by email. The township administrator stated

that the township used the email list solely for the administrative purpose of sending the newsletter electronically. The parties agreed that the newsletter, itself, qualified as a public record subject to production upon request, but they disagreed whether the lists of mailing and email addresses to which the township directed the newsletter constituted public records.

{¶ 16} Contrary to Hicks's argument that the distribution lists documented the functions or other activities of the township in keeping its constituents informed and were therefore public records, the Court of Claims held that the distribution lists did not document the township's organization, functions, policies, decisions, procedures, operations, or other activities. The Twelfth District Court of Appeals affirmed the Court of Claims' judgment, but the Supreme Court of Ohio reversed.

{¶ 17} The Supreme Court of Ohio determined that the lists documented an essential function of the township, as they were "central to connecting the township with its constituents." *Hicks*, 2024-Ohio-5449, at ¶ 17. The Supreme Court of Ohio recognized that R.C. 9.03 allows a political subdivision to use public funds to publish and distribute newsletters to communicate its plans, policies, and operations to members of the public within the political subdivision and to others who may be affected by the political subdivision. The township newsletter in *Hicks* was distributed to mailing addresses within the township (and by email to others who opted in through the township's website), and it provided recipients with information about township meetings, events, and services, contact information for each township department, and updates from the township's police, fire, service, and zoning departments. *See Hicks v. Union Twp.*, 2023-Ohio-874, ¶ 5, 8 (12th Dist.), *rev'd*, 2024-Ohio-5449. On those facts, the Supreme Court of Ohio stated, "[T]he distribution lists document particular functions and procedures of the township, revealing how and to whom the township's newsletter is regularly distributed." *Hicks*, 2024-Ohio-5449, at ¶ 17.

### D. *Doe*

{¶ 18} We now turn to this court's decision in *Doe*, which involved public-records requests for names, email addresses, mailing addresses, and telephone numbers, and seat-location information for Ohio State faculty, staff, and donors who had purchased or received season tickets for university sporting events. The Court of Claims ordered Ohio

State to produce copies of records responsive to the requests, with certain redactions, including ticketholders' mailing addresses.  Both Doe and Ohio State appealed to this court.

{¶ 19} This court considered whether the season ticketholders' personal information—their mailing addresses, email addresses, and phone numbers—documented Ohio State's organization, functions, policies, decisions, procedures, operations, or other activities, so as to qualify as "records" under R.C. 149.011(G).[1]  In answering that question, this court reviewed a series of Supreme Court of Ohio cases, including *Hicks*, that addressed whether personal information held by a public office meets the third requirement of a "*record*" under R.C. 149.011(G).  Synthesizing those cases, we stated, "[W]hether personal information satisfies the third requirement of a record turns on whether that personal information sheds any light on the public office's performance of its activities," and we concluded that season ticketholders' mailing addresses, email addresses, and telephone numbers did not do so.  *Doe* at ¶ 31.  "[B]y themselves, the mailing addresses, email addresses, and telephone numbers provide no information about or insight into Ohio State's ticketing organization, functions, policies, decisions, procedures, operations, or activities," and its disclosure "would not further the public understanding of the inner workings of Ohio State's ticketing process." *Id.*

{¶ 20} The Supreme Court of Ohio refused a discretionary appeal of this court's decision in *Doe*, despite Doe's argument that this court's decision conflicted with *Hicks*. *See Doe v. Ohio State Univ.*, 2025-Ohio-857; *Doe v. Ohio State Univ.*, 2025-Ohio-2416.

### E.  The Court of Claims did not err by applying *Doe*

{¶ 21}  The essence of Schaffer's appellate argument is that *Hicks* held that mail and email distribution lists for newsletters issued and distributed by public offices are public records under R.C. 149.011(G) and 149.43(A).  As such, Schaffer maintains, based on *Hicks* and the doctrine of stare decisis,[2] that the Court of Claims was required to hold that the distribution lists for Ohio State's athletics newsletters are public records subject to disclosure upon request.  We disagree.

---

[1] Like in *Hicks*, the parties in *Doe* did not dispute that the requested information satisfied the first two requirements under R.C. 149.011(G).

[2] The doctrine of stare decisis requires a court to recognize and follow an established legal decision in subsequent cases in which the question of law is again in controversy. *New Riegel Local School Dist. Bd. of Edn. v. Buehrer Group Architecture & Eng., Inc.*, 2019-Ohio-2851, ¶ 18. It is intended to provide continuity and predictability in the legal system. *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 43.

{¶ 22} Contrary to Schaffer's suggestion, neither the report nor the Court of Claims' judgment applying *Doe* "overruled" the Supreme Court of Ohio's opinion in *Hicks*, nor do they violate the doctrine of stare decisis. (Appellant's Compl. at 11.) First, the Supreme Court of Ohio did not hold in *Hicks* that *all* mail and email distribution lists maintained or utilized by a public office constitute public records; it held only that "the email-and-mail-distribution lists *at issue*" there satisfied each requirement in R.C. 149.011(G) and 143.43. (Emphasis added.) *Hicks*, 2024-Ohio-5449, at ¶ 15. Second, although *Hicks* is undisputedly binding precedent on both the Court of Claims and this court, *Doe* is likewise binding on the Court of Claims. *See In re Schott*, 16 Ohio App.2d 72 (1st Dist. 1968); R.C. 2743.20. Furthermore, this court neither ignored nor contradicted *Hicks* in *Doe*.

{¶ 23} In *Doe*, we discerned from *Hicks* and other Supreme Court of Ohio caselaw that whether personal information held by public offices satisfies the third prong of the definition of "record" in R.C. 149.011(G) "turns on whether that personal information sheds any light on the public office's performance of its activities." *Doe* at ¶ 31. For example, we noted the Supreme Court of Ohio's prior statement that a public office has "no obligation to disclose personal information about individuals that accumulates in government files that reveals little or nothing about the agency's own conduct." *Id.* at ¶ 22, citing *State ex rel. McCleary v. Roberts*, 2000-Ohio-345, 88 Ohio St.3d 365, 368. *See also Johnson*, 2005-Ohio-4384, at ¶ 25 (state employees' home addresses represented contact information used for administrative convenience but did not document the acts of state agencies). It is the application of that rule to the specific facts of *Doe* that led this court to conclude that the personal information requested there, unlike the personal information requested in *Hicks*, did not fall within the statutory definition of "record." In other words, this court distinguished *Hicks* based on the particular facts of each case. Finding the facts of this case more like those in *Doe* than those in *Hicks*, the Court of Claims determined it was required to follow *Doe* unless and until the Supreme Court of Ohio announces a contrary ruling that would take precedence.

{¶ 24} The Court of Claims' holding is consistent with both *Hicks* and *Doe*. As required by both cases, the Court of Claims asked whether the requested materials are records under R.C. 149.011(G), *i.e.*, whether they are " '(1) documents, devices, or items, (2) created or received by or coming under the jurisdiction of the state agencies, (3) which serve

to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.' " *Hicks*, 2024-Ohio-5449, at ¶ 15, quoting *Johnson* at ¶ 19; *see also Doe* at ¶ 20, citing *Johnson* at ¶ 19. As in both *Hicks* and *Doe*, the central issue here was whether the requested material documents the organization, functions, policies, decisions, procedures, operations, or other activities of the public office.

{¶ 25} In *Hicks*, the Supreme Court of Ohio held that the distribution lists for the township newsletters, which were published to provide Union Township residents and businesses with pertinent information from the governing body, were "central to connecting the township with its constituents, which is the purpose of a newsletter." *Id*. at ¶ 17. The Supreme Court of Ohio concluded that information revealing how and to whom the township newsletter was regularly distributed "document[ed] particular functions and procedures of the township." *Id*. The distribution lists shed light on the township's performance of its duties; to whom the township distributed the newsletter was a necessary component of evaluating the township's communication of essential information to its residents. Had the township not chosen a newsletter format for communicating with its constituents, it would have had to choose another way to communicate governmental information. In *Doe*, on the other hand, ticketholders' personal information did not shed light on Ohio State's ticketing activities, as "[a]ny particular ticketholder's mailing address, email address, or telephone number reveals little to nothing about Ohio State's activities with regard to ticketing." *Doe* at ¶ 31. Ticketholders' personal information did "not document anything about Ohio State's structure, duties, general management principles, determinations, specific methods, processes, or other acts." *Id*. at ¶ 37.

{¶ 26} Although this case involves requests for newsletter distribution lists like in *Hicks*, this distribution lists here, unlike in *Hicks,* reveal nothing about the public office's organization, functions, policies, decisions, procedures, operations, or other activities. They contain only contact information voluntarily provided by members of the public who have opted in to receive newsletters about Ohio State athletics. The lists are not curated by Ohio State, as any member of the public can opt in to receive the electronic newsletters through Ohio State's website. The contents of the newsletters, which Ohio State does not dispute qualify as records under R.C. 149.011(G), are freely available to anyone who registers to receive them. Unlike in *Hicks*, however, Ohio State's dissemination of its

athletics newsletters is not tied to its performance of statutory duties. There has been no suggestion that the identities and contact information of individuals who voluntarily subscribe to the athletic newsletters has any effect on how Ohio State carries out its operative functions. Because the identities and addresses of those who receive Ohio State's athletics newsletters reveal nothing about Ohio State's organization, functions, policies, decisions, procedures, operations, or other activities, we conclude, like the Court of Claims, that the requested material does not qualify as a record under R.C. 149.011 or a public record under R.C. 149.43.

### III.  CONCLUSION

{¶ 27}  For these reasons, we overrule Schaffer's two assignments of error and affirm the judgment of the Court of Claims of Ohio.  Additionally, we deny Schaffer's motion to strike portions of Ohio State's brief.

*Judgment affirmed*;
*motion to strike denied.*

DORRIAN and BEATTY BLUNT, JJ., concur.